UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
THOMAS GESUALDI, et al.,

                              Plaintiffs,

      -against-

MV TRANSPORT CORP. and MAL TRANSPORT INC.,

                              Defendants.
------------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
CV 20-4288 (DG)(ARL)

**LINDSAY, Magistrate Judge:**

      Before the Court, on referral from District Judge Gujarati, is the plaintiffs' motion for a default judgment against the defendants, MV Transport Corp. and MAL Transport Inc. For the reasons set forth below, the undersigned respectfully recommends that the default judgment be entered against both defendants, jointly and severally, and that the plaintiffs be awarded $1,440,187.71 in unpaid contributions, $1,178,988.26 in interest as of August 31, 2023, plus $710.23 per day in interest until the judgment is entered, $1,178,988.26 in additional damages through August 31, 2023, continuing to accrue at a rate of $710.23 from September 1, 2023 until the date judgment is entered, $15,623.50 in attorneys' fees and $751.30 in costs.[1] The undersigned further recommends that a default judgment be entered, at this time, against MAL Transport Inc. for $90,734.20, plus post-judgment interest in the amount of $10,620.43 calculated through August 31, 2023 (plus $6.34 per day from September 1, 2023 until the date

---

[1] In their complaint, the plaintiffs also seek an order directing the defendants to submit their books and records to audit for the period commencing February 1, 2017, and to pay such amount determined by the audit within 20 days of demand or to permit the plaintiffs to file for separate judgment at such time the audit is completed. The undersigned recommends that that request be denied. The "plaintiffs have not demonstrated that monetary damages are insufficient to make them whole since plaintiffs elected and sought legal remedy for damages from the estimated audit, and the Court cannot comply with the requirements of equity by issuing an audit for this exact period of time." *Gesualdi v. Reid*, 198 F. Supp. 3d 211, 223 (E.D.N.Y. 2016).

judgment is entered) representing the outstanding amount of the judgment entered in *Gesualdi, et al. v. MV Transport Corp.,* 18-CV-2396 (SJF).

## BACKGROUND

### A.     Procedural Background

The plaintiffs, Thomas Gesualdi, Louis Bisignano, Darin Jeffers, Michael O'Toole, Michael Bourgal, Frank H. Finkel, Joseph A. Ferrara, Sr., Marc Herbst, Thomas Corbett and Robert G. Wessels, as trustees and fiduciaries of the Local 282 Welfare Trust Fund, the Local 282 Pension Trust Fund, the Local 282 Annuity Trust Fund, the Local 282 Job Training Trust Fund, and the Local 282 Vacation and Sick Leave Trust Fund (the "Funds" or the "Union"), commenced this action on September 14, 2020, seeking injunctive and monetary relief under Sections 502(a)(3) and 515 of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1132(a)(3) and 1145, and Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §185.  Among other things, the plaintiffs seek a judgment against MV Transport Corp. ("MV") and MAL Transport Inc. ("MAL") for the amounts due and owing from MV to the Funds.  To that end, the defendants also seek an order adjudicating MV and MAL to be successors, alter-egos, joint employers and/or single employers and for MAL to be held, jointly and severally, for amounts due and owing from MV to the Funds.

Prior to commencing the instant action, the plaintiffs had filed an action against MV alone to collect delinquent contributions determined to be due and owing pursuant to an audit conducted for the period September 15, 2010 through October 28, 2011.  MV failed to answer in that case and, on December 17, 2018, the Clerk of the Court entered a Certificate of Default.  On

2

December 31, 2018, the plaintiffs filed a motion for a default judgment, which was granted on February 14, 2019.  The plaintiffs were awarded  $93,539.70, consisting of $20,512.51 in unpaid contributions, $24,634.08 in interest on the unpaid contributions calculated through October 16, 2017, $4,906.14 in additional accrued interest on the unpaid contributions accruing from October 17, 2017 through February 14, 2019, $29,540.00 in additional damages equal to the interest due on the unpaid contributions as of February 14, 2019, $3,591.96 in audit costs and $10,354.79 in attorney's fees and costs.  According to the plaintiffs, $90,734.20 remains unpaid and they now seek to hold MAL jointly and severally liable for the unsatisfied judgment.

Although MV did not respond to the complaint in the 2018 action, on November 20, 2020, the defendants did file an answer in this matter.  However, in July 2022, their counsel filed a letter with the Court indicating his intention to file a motion to withdraw.  In that letter, counsel indicated that his representation of the defendants had been rendered impossible due to his "inability to establish a predictable and consistent line of communication" with his clients.  On July 19, 2022, the undersigned gave counsel permission to file the motion to withdraw, which he did one week later.  The defendants were provided an opportunity to weigh-in on the motion and, at the same time, were warned by the Court that corporations could only appear in the federal courts through licensed counsel.  Notwithstanding that warning, the defendants failed to respond to the motion and, on August 12, 2022, defense counsel's application was granted.

On August 12, the undersigned issued a second order advising the defendants that "[i]t has been the law for the better part of two centuries . . . that a corporation may appear in the federal courts only through licensed counsel." *Rowland v. Cal. Men's Colony*, 506 U.S. 194, 201-02, 113 S. Ct. 716, 121 L. Ed. 2d 656 (1993).  As such, the defendants were directed to obtain

3

new counsel and to have that counsel file a notice of appearance in this action.  Moreover, the Court warned the defendants that their failure to obtain new counsel on or before September 26, 2022 could result in the imposition of sanctions, including a recommendation to the District Judge that a default judgment be entered against them.

On November 3, 2022, the plaintiffs reported that the defendants had failed to obtain new counsel and submitted a motion seeking to strike the defendants' answer and to permit them to file a motion for a default judgment.  Although, by that point, grounds existed to recommend that the defendants' answer be stricken, the undersigned decided to provide the defendants with one final opportunity to obtain new counsel and have that counsel file a notice of appearance by November 28, 2022.  But the Court advised the defendants that if they failed to do so, the undersigned would entertain a renewed motion to strike the answer and have a default judgment entered.  The defendants failed to respond and, on March 27, 2023, the plaintiffs filed the renewed motion.  Upon receipt, the undersigned recommended that the defendants' answer be stricken and that the plaintiffs be permitted to file a motion for a default judgment.

On April 28, 2023, District Judge Gujarati adopted the undersigned's recommendations that the defendants' answer be stricken and permitted the plaintiffs to file the motion now before the Court.

   **B.**  **Factual Background**

   **1.**  **The Parties**

The plaintiffs are trustees and fiduciaries of the Funds within the meaning of 29 U.S.C. § 1002(21)(A).  Compl. ¶ 3.  The Funds are "employee benefit plans" and "multiemployer plans" within the meaning of 29 U.S.C. §§ 1002(3) and (37).  *Id*. at ¶ 4.  They are jointly administered

by the Board of Trustees in accordance with Section 302(c)(5) of LMRA, 29 U.S.C. § 186(c)(5). *Id.*

MV is a New Jersey corporation licensed to do business in New York. *Id.* ¶ 8. MV is, or was, engaged in the trucking and hauling businesses within the State of New York. *Id.* ¶ 10. MAL is a New Jersey corporation doing business at 34 Rankin Street, Elizabeth, New Jersey 07206. *Id.* ¶ 11. MAL is also engaged in the trucking and hauling businesses within the State of New York. *Id.* ¶ 12; Wong Decl. ¶ 10.

### 2. The CBA and Trust Agreements

MV is a party to various collective bargaining agreements with Local 282. Compl. ¶ 13. Specifically, MV was a signatory to the 2009-2012 and the 2012-2016 Metropolitan Truckers' Association and Independents Agreements with the Union (the "CBAs"). *Id.* In addition, MV continued to submit remittance reports to the Funds after the expiration of the 2012-2016 CBA and never sent notice to them evincing an intend to terminate its obligation thereunder. *Id.* ¶¶ 14, 15. Each of those remittance reports stated, "By signing this report you agree to accept the terms of the current local 282 industry collective bargaining agreement covering the work performed by the employees." Puccio Decl. ¶ 9.

The CBAs all require MV to contribute to the Funds on behalf of workers covered by the CBA, at specified rates for each hour of covered employment, subject to certain limitations. Compl. ¶ 17. The CBAs also provide that MV is bound to the Trust Agreement. *Id.* ¶ 16. Pursuant to the Trust Agreement, an employer is required to submit to periodic audits of its relevant books and records in connection with the employer's contributions to the Funds. *Id.* ¶ 19. The Trust Agreement requires employers to submit to audits in order to verify that all

5

contributions required under the CBAs are remitted to the Funds, that such contributions are made solely on behalf of individuals eligible to participate in the Funds and that covered workers are receiving the required benefits and/or credits. *Id*. ¶ 21. Where an audit discloses a delinquency, an employer, in addition to paying the contributions identified as being owed, is required under Article IX, Section 3 of the Trust Agreement to pay (i) interest at the rate of 1.5% per month (18% per year) from the first day of the month when the payment was due through the date of payment; (ii) an amount equal to the greater of (a) interest on the delinquent contributions or (b) liquidated damages of 20 percent of the delinquent contributions; and (iii) the Funds' attorneys' fees and costs, including the audit fees. *Id*. ¶ 22.

   3.  **MAL's Affiliation with MV**

Notably, the Trust Agreement defines "Employer" as "any successor or assign of the Employer or any common law alter ego/single employer." *Id*. ¶ 23. The plaintiffs assert that MAL has, at all times relevant to this action, been a single employer with, joint employer with, alter ego of or successor to MV.[2] *Id*. ¶ 48. They base this conclusion on a number of factors including, that MV is owned by Marcos Victores and MAL is owned by Marcos' wife, Lina Victores. *Id*. ¶¶ 30-33. Lina also worked for and was an authorized representative of MV. *Id*. ¶ 34. Like MV, MAL is a transportation company and performs covered work in the geographical territory covered by MV's CBAs with the Union. *Id*. ¶¶ 35, 37; Muller Decl. ¶ 23. In addition, MAL is alleged to have the same registered offices as MV, have the same business purpose,

---

[2] According to the Arthur J. Muller III, Esq., counsel for the plaintiffs, information concerning the relationship between MV and MAL is based on his review of records of the Fund Office as well as the depositions of Marcos and Lina Victores, which he conducted in connection with the 2015 case. Muller Decl. ¶ 13.
.

share common facilities, customers, suppliers and centralized control of labor relations. Compl. ¶¶ 40-3. In fact, the address used by MAL on its incorporation records is MV's address – 34 Rankin Street. Muller Decl. ¶ 19.

The plaintiffs further assert that MAL and MV share common supervisors and interrelated operations. Compl. ¶¶ 44-5. Indeed, at a deposition in 2017, Lina confirmed that MAL employed a driver named Jose Cartaya, who, according to a prior fund audit, had also been on the MV payroll. Muller Decl. ¶ 25. As such, to the extent MV is no longer operating, the plaintiffs argue that MAL continued to perform the same work as MV with Macros Victores as its de facto owner. Compl. ¶¶ 47-8.

  **4.**   **The Funds' Audit Requests and Subsequent Calculation of Estimated Unpaid Contributions**

On July 5, 2018, after learning that MAL was an affiliate of MV, the Funds' auditors sent MV a letter requesting that it submit to an audit for the period commencing February 1, 2017 through March 31, 2018. *Id.* ¶ 26. In that letter, the Funds included a specific request for the books and records of MAL. *Id.* The Funds' auditors then sent a second and third request for an audit to MV on July 31 and August 30, 2018. *Id.* ¶¶ 27-8. Despite those requests, MV failed to submit the documentation necessary for the Funds to perform a complete audit of its books and records. *Id.* ¶ 29.

Pursuant to Article IX, Section 1(e) of the Trust Agreement, where an employer has failed to submit remittance reports and/or pertinent books and records for audit, the Funds may estimate the amount of unpaid contributions as follows: the monthly contribution is computed by adding ten percent (10%) to the number of hours in which the largest number of hours were reported in the prior twelve (12) months or fifty-two (52) weeks (or any combination thereof), as

the case may be, for which reports reflecting at least one hour of covered work performed were submitted by the Employer. Puccio Decl. ¶¶ 16, 19. The period in which the largest number of hours was reported is referred to in the Trust Agreement as the "base month." *Id.*

The last report submitted by MV was for the period March 2017. *Id.* ¶ 17. For the period ending April 2017 through June 2020 (the expiration of the CBA), the plaintiffs determined that the month of October 2011, for which MV reported 715.50 hours for the Welfare Fund, 697.50 hours for the Pension and Job Training Funds, 735.50 hours for the Annuity Fund and 701.50 hours for the Vacation Fund, was the greatest number of hours reported to the Funds within the last 52 week period reflecting at least one hour of covered work. *Id.* ¶ 21. Adding 10% to the number of hours reported for that base month results in estimated hours of 787.05 hours for the Welfare Fund, 767.25 hours for the Pension and Job Training Funds, 809.05 hours for the Annuity Fund and 767.25 hours for the Vacation Fund. Id. ¶ 22. Accordingly, the plaintiffs claim that the amount of contributions now due and owing from MV is $1,440,187.71.[3]

## DISCUSSION

A.  **Legal Standard Governing Default Judgments**

Federal Rule of Civil Procedure 55 establishes a two-step process regarding default judgments. First, the Clerk of the Court enters the party's default. Then, as here, a motion for a

---

[3] In the complaint, the plaintiffs also seek injunctive relief. However, they do not purse this relief in the motion for default judgment and therefore the claim is deemed abandoned. *See Bd. of Trustees of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund & Welfare Fund v. Harbor Island Contracting, Inc.,* No. 13-CV-6075 MKB, 2015 U.S. Dist. LEXIS 34643, 2015 WL 1245963, at *2 (E.D.N.Y. Mar. 16, 2015) ("The Trustees do not pursue this relief in their motion for default judgment, and thus the Court deems this request abandoned."); *Gesualdi v. Interstate Masonry Corp.,* No. 11 CV 958, 2011 U.S. Dist. LEXIS 151888, 2011 WL 7032900 at *11 (E.D.N.Y. Nov. 16, 2011) ("Although in the Complaint, plaintiffs seek to permanently enjoin defendant. . ., plaintiffs have not demonstrated the necessity of a permanent injunction. Indeed, in submitting their inquest papers, counsel appears to have abandoned the request for injunctive relief."), report & rec. adopted, 2012 U.S. Dist. LEXIS 886, 2012 WL 27441 (E.D.N.Y. Jan. 4, 2012).

default judgment is made to the district court judge. A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) ("[A]ll well-pleaded factual allegations in the plaintiff's complaint pertaining to liability are deemed true"). However, even if a plaintiff's claims are deemed admitted, a plaintiff must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009)) (alterations omitted).

In addition, in the context of a motion for default judgment, conclusory allegations cannot establish that the defaulting party is liable as a matter of law. *See E.A. Sween Co., Inc. v. A&M Deli Express Inc.*, 787 F. App'x 780, 782 (2d Cir. 2019) (summary order) ("A defaulting party admits only well-pleaded factual allegations; it does not admit conclusory allegations or legal conclusions."). "Conclusory allegations based on information and belief" are generally insufficient to support a finding of default-based liability. *J&J Sports Prods., Inc. v. Daley*, No. 06-CV-0238, 2007 U.S. Dist. LEXIS 49839, 2007 WL 7135707, at *3-4 (E.D.N.Y. Feb. 15, 2007). However, allegations on information and belief may be sufficient to hold a defendant individually liable on a default judgment where such allegations state facts primarily within the defendant's knowledge. *See Joe Hand Promotions, Inc. v. Blais,* No. 11 Civ. 1214, 2013 U.S. Dist. LEXIS 142427, 2013 WL 5447391, at *3 (E.D.N.Y. Sept. 10, 2013) (deeming admitted

9

allegations pled on information and belief in default judgment context); *see also Sexy Hair Concepts, LLC v. Sexy Hair Inc.*, No. 12 Civ. 3937, 2013 U.S. Dist. LEXIS 142361, 2013 WL 5460629, at *4 (E.D.N.Y. Sept. 30, 2013) (deeming admitted allegation on information and belief that defendant owned corporate entity and directed and controlled the activity of the business in default judgment context).

  A default also "effectively constitutes an admission that the damages were proximately caused by the defaulting party's conduct: that is, the acts pleaded in a complaint violated the laws upon which a claim is based and caused injuries as alleged." *Cablevision Sys. New York City Corp. v. Lokshin*, 980 F. Supp. 107, 111 (E.D.N.Y. 1997).  With respect to damages, the movant need only prove that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound*, 973 F.2d at 159.  Nonetheless, "the court must conduct an inquiry to ascertain the amount of damages with reasonable certainty." *Annuity, Welfare & Apprenticeship Skill Improvement & Safety Funds v. Midwest REM Enters*., No. 20-cv-05896 (KAM), 2021 U.S. Dist. LEXIS 125474 (E.D.N.Y. July 6, 2021).  While the Court need not hold a hearing to determine damages, "[e]ven in the absence of a hearing, . . . the district court cannot simply rely on the plaintiff's statement of damages." *House v. Kent Worldwide Mach. Works, Inc*., 359 F. App'x 206, 207 (2d Cir. Jan. 4, 2010) (summary order) (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997)). "Proof of damages must therefore be based on admissible, authenticated evidence." *Bd. of Trs. of the United Union of Roofers v. Dana Restoration, Inc.,* No. 09-cv-1076 (RRM)(ALC), 2010 U.S. Dist. LEXIS 103211, 2010 WL 3925115, at *2 (E.D.N.Y. Sept. 14, 2010).

B.  **Unpaid Contributions**

1.  **Liability**

Accepting the allegations in the complaint as true, the plaintiffs have asserted a valid claim for unpaid contributions under ERISA.  ERISA requires employers to pay fringe benefit contributions pursuant to a valid collective bargaining agreement.  29 U.SC. § 1145.  Specifically, the statute states that

> [e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145.  In this case, MV was a signatory to the 2009-2012 and 2012-2016 CBAs and continued to be bound, based on its submission of remittance reports, to the CBA and Trust Agreements in effect through May 2020.  Compl. ¶¶ 13-14.  Article IX, Section 1(e) of the Trust Agreement, permits the Funds to estimate the amount of unpaid contributions where an employer has failed to submit remittance reports and/or pertinent books and records for audit.  Puccio Decl. ¶¶ 16, 19.  MV failed to submit to an audit for the period commencing February 1, 2017 through March 31, 2018, which would have included a review of the books and records of MAL  Compl. ¶ 26.  The plaintiffs also sent demand letters to MV notifying it of its obligation to submit reports and applicable contributions, each month, from April 2017 – May 2020.  Puccio Decl. Ex. 4.  Again, MV failed to respond.  As a result, the Funds' auditors calculated the estimated unpaid contribution due and owing for the period April 2017-June 2020 by adding 10% to the "base month" described in the facts above.  As such, the plaintiffs have sufficiently set forth the elements of a claim for liability under ERISA against MV.

11

### 2. Damages

ERISA provides a right of recovery to plaintiffs who have established liability under Section 515 for unpaid contributions, interest, liquidated damages, reasonable attorneys' fees and costs, and other legal and equitable relief as the court may deem appropriate. 29 U.S.C. § 1132(g)(2). In support of their request for an award of damages, the plaintiffs have submitted the declarations of Joseph Puccio, Stern Wong and Diego Remache. ECF Nos. 45, 46, 49. Attached to the declarations are copies of the applicable Trust Agreement, CBAs, and letters sent by the Funds to MV, which set forth defendant's contribution obligations to the Funds and the Funds' various demands for payment.

    *a.    Unpaid Contributions*

ERISA section 502(g)(2)(A), 29 U.S.C. § 1132(g)(2)(A), provides for an award of unpaid contributions by the defendant. As noted above, the CBAs and Trust Agreements do as well. The plaintiffs seek estimated unpaid contributions in the total amount of $1,440,187.71 for the period April 1, 2017 through June 30, 2020. *See* Puccio Decl. Ex. 7. For all the reasons set forth above, the undersigned respectfully recommends that the plaintiffs be awarded $1,440,187.71 in unpaid contributions as against MV.

    *b.    Interest on Unpaid Contributions*

ERISA Section 502(g)(2)(B), 29 U.S.C. § 1132(g)(2)(B), mandates an award of interest on unpaid contributions. The statute provides that "interest on unpaid contributions shall be determined by using the rate provided for under the plan, or, if none, the rate prescribed under section 6621 of Title 26 [the Internal Revenue Code of 1986.]" 29 U.S.C. § 1132(g)(2). Article IX, Section 3 of the Trust Agreement entitles the Funds to collect interest on the unpaid

contributions at the rate of one and one-half percent (1 ½%) per month or eighteen percent (18%) per year from the actual due date to the date when payment is made. Puccio Decl. Ex. 1. Pursuant to the estimated audit, interest of $1,178,988.26 is due through August 31, 2023. $710.23 per day is due from September 1, 2023 until the date judgment is entered. Thus, the plaintiffs have submitted proof of the interest owed for the unpaid contributions between April 2017 and June 2020. Accordingly, the undersigned recommends that the plaintiffs be awarded interest as against MV in the amount of $1,178,988.26, plus $710.23 per day from September 1, 2023 until the date judgment is entered.

        *c.*      *Liquidated Damages*

29 U.S.C. § 1132(g)(2)(C) allows for liquidated damages in an amount equal to the greater of interest on the unpaid contributions or 20% of the unpaid amounts due. As the interest amount in this case is greater than 20% of the unpaid contribution amount, the plaintiffs are entitled to liquidated damages equal to the amount of interest, that is $1,178,988.26, with additional damages continuing to accrue at a rate of $710.23 per day from September 1, 2023, until the date judgment is entered and the undersigned recommends that the plaintiffs be awarded that amount as against MV.

        *d.*      *Attorneys' Fees and Costs*

Section 502(g)(2) of ERISA mandates awarding reasonable attorneys' fees and costs in ERISA matters brought by fiduciaries to enforce the terms of the CBA. 29 U.S.C. § 1132(g)(2)(D). As a general matter, in determining appropriate attorneys' fees, the "starting point" for calculating a "'presumptively reasonable fee," is "the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v.*

13

*Metro-North R.R. Co.,* 658 F.3d 154, 166 (2d Cir. 2011) ("Both this Court and the Supreme Court have held that the lodestar – the product of a reasonable hourly rate and the reasonable number of hours required by the case – creates a 'presumptively reasonable fee'.") (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)). The Supreme Court held that "the lodestar method produces an award that roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case." *Perdue v. Kenny A. Ex rel. Winn.,* 559 U.S. 542, 551 (2010) (emphasis in original). "The lodestar figure includes most, if not all, of the relevant factors constituting a 'reasonable attorney's fee." *Id*. at 553 (citation omitted); see Arbor Hill Concerned Citizens Neighborhood Assoc., 522 F.3d at 184, 190-91 (holding a court determines a "presumptively reasonable fee" by considering case specific factors in order to establish a reasonable hourly rate that a "reasonable, paying client would be willing to pay," and then multiplying that rate by the number of reasonable hours). This assessment is undertaken "bear[ing] in mind that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill Concerned Citizens Neighborhood Assoc.,* 522 F.3d at 190. The reasonableness of hourly rates are guided by the market rate "[p]revailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984), and the relevant community is generally the "district in which the court sits," *Polk v. New York State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983). Moreover, "[t]he burden is on the party seeking attorney's fees to submit sufficient evidence to support the hours worked and the rates claimed," *Hugee v. Kimso Apartments*, LLC, 852 F. Supp. 2d 281, 291 (E.D.N.Y. 2012),

14

and this Circuit requires contemporaneous billing records for each attorney, see *Scott v. City of New York*, 643 F.3d 56, 57 (2d Cir. 2011). Finally, there is a "strong presumption" that the lodestar represents the appropriate award, though "enhancements may be awarded in rare and exceptional circumstances." *Perdue,* 559 U.S. at 552.

In the present case, the plaintiffs retained the services of Trivella & Forte LLP. They billed the Funds for legal services totaling $15,623.50. To support the plaintiffs' request for attorneys' fees and costs, the plaintiffs submitted the Declaration of Arthur Muller of Trivella & Forte LLP, along with contemporaneous billing records annexed to the affirmation. See ECF No. 44, Ex. 8. The itemization reflects that four attorneys and one paralegal worked on this case. The plaintiffs also offered biographical information concerning the attorneys for whom charges were submitted to enable the Court to evaluate their experience levels. *Id* at ¶¶ 46-56; *see also Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 305 (E.D.N.Y. 2015).

Based on its review of those records, the Court finds that the attorneys' rates are consistent with the rates awarded in this district in ERISA cases. Mr. Smith and Mr. Muller, who primarily worked on the matter, both charge a current rate of $480 per hour. Clare Duda and Giuseppe Fioretto and Ms. Salerno billed at a rate of $120.00 per hour. By 2021, courts in this district were typically awarding hourly rates ranging from $400 to $450 per hour for partners in cases such as this. *See Gesualdi v. Burtis Constr. Co*., No. CV 20-4864 (ARR) (ARL), 2021 U.S. Dist. LEXIS 246876 (E.D.N.Y. Dec. 28, 2021) (reducing rates of Christopher Smith and Michelle Salerno to $400 and $100, respectively). Similarly, courts in this district were already awarding hourly rates of $200-$300 per hour for senior associates and $100-$200 per hour for

15

junior associates in 2020. No. CV 19 2344 JS AKT, 2020 WL 1931635, at *13 (E.D.N.Y. Mar. 18, 2020).  The court finds the modest increase to be reasonable.

The undersigned also finds the hours billed to be reasonable given the history of this case.  The time records submitted here describe what tasks were performed on behalf of the plaintiffs, the dates on which such tasks were performed, and the amount of time expended.  Based on the foregoing, it is recommended that the plaintiffs be awarded $15,623.50. in attorney fees.

The plaintiffs also seek $751.30 in costs.  *See Trs. of Local 7 Tile Industry Welfare Fund v. Amarko Marble & Granite Co.,* No. 13-CV-2779, 2014 WL 1622098, at *11 (E.D.N.Y. Apr. 22, 2014) ("Generally, reasonable costs may be recovered by the prevailing party in an ERISA action.").  According to the plaintiffs' counsel's billing records, this amount is comprised of the $400.00 filing fee, $307.00 in process server fees, and the balance in postage costs.  Thus, the undersigned finds the request to be reasonable and recommends that the plaintiffs also be awarded $751.30 in costs.  *See Teamsters Local 814 Welfare Fund v. Dahill Moving & Storage Co., Inc.*, 545 F.Supp.2d 260, 269 (E.D.N.Y. 2008)(expenses ordinarily include costs relating to filing fees, process servers, postage, and photocopying).

### 3.   MAL's Joint and Several Liability for the Recommended Award and the Unsatisfied Judgment

Finally, the undersigned recommends that the default judgment and the recommended award of damages also be entered as against MAL.  A collective bargaining agreement may be enforced against a non-signatory employer if the employer constitutes a "single employer" or "alter ego" of a signatory to a CBA.  *Brown v. Sandimo Materials*, 250 F.3d 120, 129 n. 2 (2d Cir. 2001) (citing *Lihli Fashions Corp. v. NLRB*, 80 F.3d 743, 747 (2d Cir. 1996) (per curiam));

16

*Barbera v. R. Rio Trucking*, No. 03-CV-1508, 2010 WL 3928553, at *8 (E.D.N.Y. Sept. 30, 2010). "'Separate companies are considered a 'single employer' if they are 'part of a single integrated enterprise.'" *Brown,* 250 F.3d at 129 n. 2. In order to determine "whether the defendants' employees constitute a 'single bargaining unit,'" in cases like here, the Court often looks at factors like "operational integration, geographic proximity, common supervision, similarity in job function and degree of employee interchange." *Id.* (citing *Dominic Prisco Transp. Inc, N*o. CV–95–1121 (ADS), 1997 WL 1093463, at *3 (E.D.N.Y. 1997)).

In a similar vein, the alter ego doctrine can bind a non-signatory to a CBA. *Id.* (citing *Truck Drivers Local Union No. 807 v. Regional Import & Export Trucking,* 944 F.2d 1037, 1046 (2d Cir. 1991)). "'The hallmarks of alter ego doctrine include whether the two enterprises have substantially identical management, business purpose, operation, equipment, customers, supervision, and ownership. " *Id*. Unlike the single enterprise analysis, "the focus of the alter ego doctrine . . . is on the existence of a disguised continuance or an attempt to avoid the obligations of a collective bargaining agreement through a sham transaction or a technical change in operations." *Id*. In other words, the purpose of the alter ego doctrine is to prevent an employer from gaining an unearned advantage in his labor activities by creating parallel or successor companies to evade his responsibilities under a CBA. *Barbera*, 2010 WL 3928553, at *10.

In this case, the evidence presented by the plaintiffs strongly suggests that Marcos and Lina Victores set up MAL to evade MV's obligations to pay benefits to employees required by the CBA to which it was bound. Both entities performed the same work, at the same offices, and shared, at least one, common employee. Lina Victores remained an active representative of MV

17

through 2017, while at the same time owning and operating MAL from 2013. In fact, at her deposition in 2017, she acknowledged MAL was performing trucking work and continued to employ at least one driver who was previously reported as an employee of MV. Moreover, when the affiliation came to light, the plaintiffs asked to review MAL's books and record to ascertain the full extent of the relationship between the two companies and the defendants refused to provide those records. Accordingly, the undersigned recommends that the plaintiffs' instant motion for a default judgment and the related award also be granted as against MAL and that MAL be held jointly and severally liable for the balance of the judgment of $90,734.20, plus post-judgment interest in the amount of $10,620.43 calculated through August 31, 2023, previously entered in favor of the plaintiffs as against MV. *See Trustees of the Local 7Tile Industry–Welfare Fund v. Amarko Marble & Granite Co., Inc.,* No. 13–CV–2779, 2014 WL 1622098 (E.D.N.Y. Apr. 22, 2014) (adopting report and recommendation that one defendant was alter ego of other defendant and thus both defendants were jointly and severally liable for the obligations of the other, including a judgment previously entered against one of the defendants).

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served by the Court on the plaintiffs. Counsel for the plaintiffs is directed to immediately serve the defendants with a copy of this Report and Recommendation and to file proof of service with the Court. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Any requests for an extension of time for filing objections must be directed to District Judge Gujarati prior to the expiration of the fourteen (14) day period for filing

objections.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
       November 3, 2023

                                                                         _____/s/_____
                                                                         ARLENE R. LINDSAY
                                                                         United States Magistrate Judge